UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.

TIMOTHY JAMES SEBOLT,

      Defendant.
_____/

Case No.  1:05-CR-212

Hon. Gordon J. Quist

## OPINION

Defendant Timothy James Sebolt has been indicted for possession of a firearm in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute five grams or more of a substance containing cocaine base in violation of 18 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and possession with intent to distribute a quantity of marijuana in violation of 18 U.S.C. § 841(a)(1), (b)(1)(D).  The firearm and controlled substances were seized upon the execution of a search warrant at 1226 Center Street, Lansing, Michigan.  Defendant moves to suppress the firearm and controlled substances seized at 1226 Center Street, arguing that the affidavit in support of the search warrant was insufficient to establish probable cause.  Defendant does not argue that the facts stated in the affidavit are false.  For the following reasons, the Court will deny Defendant's motion to suppress.

### I. Findings of Fact

The affidavit in support of the search warrant provides as follows:  On March 3, 2005, Officer Theresa Angers of the Lansing Police Department was dispatched to a Hungry Howie's Pizza restaurant to investigate a counterfeit money complaint.  An employee of Hungry Howie's Pizza stated that she obtained counterfeit money on March 2, 2005, from a person at 1226 Center Street

in Lansing, Michigan, in exchange for pizza. The employee gave Officer Angers a description of the person she alleged gave her the counterfeit money.

On March 4, 2005, Officer Angers observed Vernon Brown standing in front of 1226 Center Street. Later that day, Officer Angers "had occasion to have contact with" Vernon Brown. Vernon Brown informed Officer Angers that on March 4, 2005, he delivered cocaine to a man whom he knew as "Mike" at 1226 Center Street. Brown described "Mike" as a Native American male with dark straight hair, medium complexion, 5' 9", thin build, and approximately 45 years old. Brown told Officer Angers that he had made regular deliveries of cocaine to "Mike" at 1226 Center street over the past year.

Brown further informed Officer Angers that six months prior "Mike" told him that he could buy additional quantities of cocaine from Brown because he ("Mike") had a lot of money. Brown stated that "Mike" took him to the basement area of 1226 Center Street and showed Brown counterfeit U.S. currency and counterfeit currency making equipment (computers and printers). Brown stated that "Mike" provided him with counterfeit currency. Brown told Officer Angers that, over the past six months, as he had made weekly deliveries of cocaine to "Mike" at 1226 Center Street, he witnessed, "almost every time, . . . the counterfeit US currency operation that 'Mike' operates, with March 4, 2005, being the last time." Brown also informed Officer Angers that "Mike" continued on a weekly basis to provide him with counterfeit money.

Brown further informed Officer Angers that in addition to witnessing cocaine within 1226 Center Street, he has also observed on a regular basis OxyContin and Ecstacy within the residence. Finally, Brown informed Officer Angers that he had observed a loaded "SKS" assault style rifle within the upstairs portion of 1226 Center Street.

In "the early morning hours of March 5, 2005," Officer Angers "transported Vernon Brown to the area of 1226 Center Street." Officer Angers observed a subject standing in front of 1226

2

Center Street. Vernon Brown identified the subject as "Mike." Officer Angers stated that "Mike" matched the same general description as that provided by the Hungry Howie's Pizza employee.

Based upon the information she received from the Hungry Howie's Pizza employee, from Vernon Brown, and from her own observations, Officer Angers prepared a search warrant application and affidavit. A Michigan district court judge signed the search warrant on March 5, 2005. Later that day, the search warrant was executed. When the officers entered the residence they found four occupants, "Mike," later identified as Timothy James Sebolt, another adult male, Dale Roberts, and two children (Zachary Sebolt, 12 years old, and Alicia Sebolt, 4 years old). During the search, officers found a loaded Ruger 9mm handgun, approximately 92 grams of marijuana, and 11 grams of crack cocaine.

## II. Conclusions of Law

**A.      Sufficiency of Affidavit to Establish Probable Cause**

In determining whether an affidavit is sufficient to support a finding of probable cause, the Supreme Court has instructed "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983). Rather, the Court continued, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590 (1969)). Thus, the Court concluded, so long as a magistrate, in considering the totality of the circumstances, had a substantial basis for concluding that there was a "fair probability that contraband or evidence of a crime [would] be found in a particular place," then the magistrate's finding of probable cause should not be disturbed, for "the Fourth Amendment requires no more." *Id.* at 236, 238, 103 S. Ct. at 2331-32. Furthermore, the Court explained, when an affidavit in support of a search warrant is based upon an informant's statements, a court should consider the informant's veracity, reliability, and basis of knowledge, as they "may usefully

3

illuminate the commonsense, practical question whether there is 'probable cause' to believe that [evidence of wrongdoing] is located in a particular place." *Id*. at 230, 103 S. Ct. at 2328.

In this case, Defendant fails to meet his burden in establishing that the affidavit did not provide the magistrate with a sufficient basis for concluding that there was a fair probability that evidence of criminal wrongdoing would be found at the residence at 1226 Center Street. The Hungry Howie's Pizza employee stated that she received counterfeit money from a person at 1226 Center Street. Vernon Brown similarly stated that he received counterfeit money from a person whom he knew as "Mike" at 1226 Center Street. Brown further stated that six months prior "Mike" had shown him counterfeit making equipment in the residence's basement, and, over the past six months, as he made weekly deliveries of cocaine to "Mike," he observed the counterfeit currency operation and received counterfeit currency, with March 4, 2005, being the last time. On March 5, 2005, Brown identified the person whom he knew as "Mike" to Officer Angers. Officer Angers stated that "Mike" matched the same general description as given by the Hungry Howie's Pizza employee.

On the basis of these facts, a magistrate would have a sufficient basis to conclude that there was a fair probability that evidence of a counterfeit currency operation would be found at 1226 Center Street.[1] *See Rice v. United States*, No. 04-5751, 2005 WL 1313798 (6th Cir. May 13, 2005) (finding probable cause on the basis of statement from a person caught with counterfeit money who claimed her boyfriend, at his residence, gave the counterfeit money to her). The Hungry Howie's Pizza employee's statement and Brown's statements, given independently from two completely

---

[1]Because probable cause existed to search the residence for evidence of a counterfeit currency operation, even if the Court were to find that the affidavit was insufficient to support a finding of probable cause to search the house for drugs or a gun based upon Vernon Brown's statements, this would not compel the conclusion that the drugs and the gun must be suppressed, since, in lawfully searching for the counterfeit money, the officers would have discovered the drugs and the gun in plain view. The officers would have been able to immediately seize the drugs as their criminal nature was readily apparent. Although the criminal nature of a Ruger 9mm handgun may not be readily apparent (assuming the officers do not know that the suspect is a convicted felon), the officers would have been entitled to seize the gun to secure their protection upon searching the house.

4

unrelated sources, corroborate and help to validate each other. *See United States v. Pritchard*, 745 F.2d 1112, 1121 (7th Cir. 1984) ("By telling consistent yet independent stories, the informants provide cross-corroboration, and enhance the reliability of the application as a whole.") (internal quotes and citation omitted); *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (noting that when an informant's statement is corroborated, the informant's veracity may thereby be established); *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) ("[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant") (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)).

In addition to informing Officer Angers that he received counterfeit money from Defendant and that he observed counterfeit money making equipment in the basement of the residence, Brown also stated that he observed cocaine, OxyContin, Ecstacy, and an assault-style rifle at the house. Defendant argues that there is nothing in the search warrant affidavit that shows why Brown's statements should have been believed, i.e. that he is reliable. The Court concludes, however, that Brown's statement, in light of all the circumstances, is sufficiently reliable to have permitted a magistrate to conclude that there was a fair probability that evidence of illicit drugs and a gun would be found at 1226 Center Street for the following reasons: Vernon Brown's basis of knowledge as to who lived at 1226 Center Street and as to evidence of criminal wrongdoing within it was established by his statement to Officer Angers that he had been delivering cocaine to a person whom he knew as "Mike" at 1226 Center Street for about a year, and that, through these dealings, he had the opportunity to be present in the house where he observed the contraband. This statement is from an informant who observed the contraband firsthand. As the Supreme Court acknowledged, an informant's tip that an "event was observed firsthand . . . entitle[s the informant's] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234, 103 S. Ct. at 2330. Moreover,

5

the fact that Brown's statement regarding counterfeit money was consistent with the Hungry Howie's Pizza employee's statement further validates Brown's reliability. Furthermore, unlike in the case where an anonymous tipster or a confidential informant is used to support an affidavit for a search warrant, Brown's identity was disclosed in the affidavit to the issuing judge.  The Sixth Circuit has recognized that an "informant's tip is considered to have greater reliability, and therefore to be more supportive of a finding of probable cause, if the . . . informant['s name] has been disclosed to the issuing judge."  *United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005).  "This is so," the court continued, "largely because the informant's recitation to the police, 'if fabricated[,] would subject him to criminal liability.'" *Id.* (quoting *Gates*, 462 U.S. at 233, 103 S. Ct. at 2330).  Finally, Brown's statement that on a weekly basis over the past year he had been delivering cocaine to 1226 Center Street is a statement against his penal interest.[2]  An informant's statement against his penal interest "bears intrinsic evidence of credibility" and supports the issuance of a search warrant. *United States v. Czuprynski*, 46 F.3d 560, 564 (6th Cir. 1995) (en banc); *see also United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976) (finding probable cause for the issuance of a search warrant where the affidavit contained information from informant implicating herself in criminal activity).  As the Supreme Court has noted:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit . . . statements [given against one's penal interests, for p]eople do not lightly admit a crime and place critical evidence in the

---

[2] During oral argument on this motion, Defendant's counsel argued that Vernon Brown' statement in the affidavit that he told Officer Angers that he had been selling cocaine to a person whom he knew as "Mike" at 1226 Center Street was incredible, and, therefore, the magistrate should have inquired into the underlying circumstances as to how this admission came about.  Defendant's counsel at oral argument conceded that he is not presenting a *Franks* argument to the Court.  A *Franks* challenge can be made where an officer intentionally, or with reckless disregard for its truth, includes a false statement in an affidavit.  *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2675 (1978).  The Sixth Circuit has held that a *Franks* challenge is also appropriate where "the affiant engaged in deliberate or reckless disregard of the truth in omitting . . . [material] information from the affidavit."  *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001).  As Defendant is not presenting a *Franks* argument, the Court must judge the adequacy of the affidavit on "what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)(en banc).

>hands of the police in the form of their own admissions.  Admissions of crime . . . carry their own indicia of credibility - sufficient at least to support a finding of probable cause to search.

*United States v. Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 2082 (1971).  In responding to the concern that a statement against one's penal interest should be discounted for it may be given in an effort to curry favor with the police, the Court provided:

>That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct.  Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another.  But, [in considering the specific facts] here[,] the informant's admission that over a long period and currently he has been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search.

*Id*; *see also Czuprynski*, 46 F.3d at 564-65 (noting that persons with personal motives to lie "are often the source of very reliable information.  To require a police officer to discount such information would result in the rejection of a good deal of evidence relied upon daily by courts and juries.  If a reasonable police officer cannot rely on such evidence, no juror should be permitted to do so either").  In the instant case, similarly, Brown's statement that he had been delivering cocaine to 1226 Center Street on a weekly basis over a year strongly implicated that property.  The facts supporting probable cause in this case, however, are stronger than those in *Harris*.  For not only is there a statement from Brown that he had been delivering cocaine to 1226 Center Street for a year, but Brown's statement that he had received counterfeit money from a person at 1226 Center Street was consistent with prior information from a person who had received counterfeit money from that same address, and Brown's identity (unlike the informant's identity in *Harris*) was disclosed in the affidavit.

Therefore, in considering the totality of the circumstances, the Court concludes that the Michigan district court judge who issued the warrant had a substantial basis for concluding not only

that there was a fair probability that counterfeit money and counterfeit money making equipment would be found on the premises, but also that drugs and a gun would be found.

**B.     Good-Faith Exception**

Even if the Court were to conclude that the affidavit in support of the search warrant was insufficient to establish probable cause to search the residence at 1226 Center Street, the Court concludes that the evidence seized in this case would still not be suppressed due to the *Leon* "good-faith" exception. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court held in *Leon* that the exclusionary rule "should . . . not . . . bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S. Ct. at 3411. This is so, the Supreme Court explained, because the purpose of the exclusionary rule, which is to deter police misconduct, will not be served by excluding evidence seized by an officer acting in good faith. *Id.* at 916, 104 S. Ct. at 3417. In determining whether an officer acted in good-faith, the Supreme Court instructed that the "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 923 n.23, 104 S. Ct. at 3420 n.23. The Court explained that in the following circumstances, a reasonably well trained officer would have known that the search was illegal despite a magistrate's authorization: 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit was "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or 4) where "a warrant is so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officer" could not have presumed it to be valid. *Id.* at 923, 104 S. Ct. at 3421.

8

In this case, the only basis upon which Defendant could argue that the executing officer did not in good-faith rely upon the warrant is by asserting that the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. To establish a *Leon* good faith reliance, the government has "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). Otherwise, the *Leon* exception "would be devoid of substance." *Id.* In *United States v. McCraven*, 401 F.3d 693 (6th Cir. 2005), the court found that evidence seized upon the execution of a warrant should not be suppressed due to the "good-faith" exception. *Id.* at 698. In *McCraven*, the affidavit in support of the search warrant provided that the affiant had talked with an informant who had given the affiant reliable information in the past and who had observed a suspect storing and selling cocaine and marijuana inside the suspect's residence. *Id.* at 695. The court opined that the sufficiency of the affidavit was a close question and chose not to address it. *Id.* at 698. The court held that denial of the motion to suppress was proper under the good-faith rule because it was "obvious that . . . a reasonably well trained officer would not necessarily have known that the affidavit supporting the warrant at issue here was insufficient, if in fact it was insufficient." *Id.*

This Court concludes that a reasonably well trained officer would not necessarily have known that the affidavit supporting the warrant at issue here was insufficient, if in fact it were.[3]

---

[3] During oral argument, Defendant's counsel appeared to maintain that if the warrant were insufficient, then an officer should not be able to rely upon it in good faith, for otherwise evidence will be admitted against a defendant even though it was seized in violation of the Fourth Amendment. This policy argument, however, was rejected by the Supreme Court in *Leon*. The Court noted that "the use of fruits of a past unlawful search or seizure 'work[s] no new fourth Amendment wrong.'" *Leon*, 468 U.S. at 906, 104 S. Ct. at 3411 (citation omitted) (alteration in original). Rather, the Court continued, "[t]he wrong condemned by the Amendment is 'fully accomplished' by the unlawful search or seizure itself . . . and the exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" *Id.*, 104 S. Ct. at 3412 (citation omitted). "The [exclusionary] rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.* (citation omitted). "Whether the exclusionary sanction is appropriately imposed in a particular case," the Court noted, "is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Id.* (citation omitted). Since

9

### III. Conclusion

Because the Court concludes that Defendant failed to show that the judge who issued the warrant did not have a substantial basis for concluding that there was a fair probability that evidence of illegal drugs, counterfeit money, counterfeit money making equipment, and a gun, would be found at 1226 Center Street, the evidence should not be suppressed. And, alternatively, even if the issuing judge did not have a substantial basis for concluding that there was probable cause to search the residence, the evidence would still not be suppressed pursuant to the good-faith exception to the exclusionary rule because the affidavit is not so lacking in indicia of probable cause as to render official belief in it unreasonable.

An order consistent with this opinion will be entered.


Dated: January 3, 2006                                    /s/ Gordon J. Quist
                                                                          GORDON J. QUIST
                                                                 UNITED STATES DISTRICT JUDGE

---

the deterrent purpose of the exclusionary rule is not advanced when an officer relies upon a warrant in good-faith, evidence obtained pursuant to a warrant, subsequently found to be defective, is not suppressed if a reasonably well trained officer would not have known that the warrant was insufficient.